# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY R. CHARLTON, | Case No. 5:17-cv-02192-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Brittany R. Charlton ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for supplemental security income ("SSI"), under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

/ / /

# I. BACKGROUND

Plaintiff filed an application for SSI on July 23, 2014, alleging disability beginning on June 1, 2014. Transcript ("Tr.") 193-214.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on August 3, 2016, ALJ Kenneth E. Ball determined that Plaintiff was not disabled. Tr. 17-29. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on September 5, 2017. Tr. 1-6. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing

---

[1] A certified copy of the Administrative Record was filed on March 15, 2018. Electronic Case Filing Number ("ECF No.") 16. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one

3

through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[2]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

---

[2] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ found at step one, that "[Plaintiff] has not engaged in [SGA] since July 23, 2014, the application date (20 CFR 416.971 et seq.)." Tr. 19.

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: bipolar I disorder; panic disorder; and generalized anxiety disorder (20 CFR 416.920(c))." Id.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Id.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, and carry out instructions to perform tasks that are simple and routine and require only simple work-related decisions; tolerate only occasional changes in a routine work setting; nave no contact with the public; have only occasional interaction with coworkers and supervisors; and no other limitations.

Tr. 22.

At step four, the ALJ found that "[Plaintiff] in unable to perform any past relevant work (20 CFR 416.965)." Tr. 27.

In preparation for step five, the ALJ observed that "[Plaintiff] was born on July 6, 1993 and was 21 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963)." Id. The ALJ also observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964)." Id. The ALJ observed that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 28. Specifically, the ALJ found that Plaintiff could perform the "medium, unskilled" occupations of "laundry worker II," as defined in the dictionary of occupational titles ("DOT") at DOT 361.685-018, "cleaner, hospital, DOT 323.687-010," and "kitchen helper, DOT 318.687-010." Id. The ALJ, therefore, found that Plaintiff "has not been under a disability, as defined in the . . .

Act, since July 23, 2014, the date the application was filed (20 CFR 416.920(g))." Id.

### C. Issue Presented

In this appeal, Plaintiff raises only one issue, whether the ALJ properly considered her treating physician's opinion. ECF No. 17, Joint Stipulation at 2.

### D. ALJ's Analysis of Dr. Lu's Opinion

The ALJ "d[id] not give significant weight" to three opinions from Plaintiff's treating psychiatrist Jing Lu., M.D., from August 21, 2014, December 2, 2014,[3] and July 7, 2016, that were provided on check-the-box forms. Tr. 25. The ALJ noted that Dr. Lu indicated on all three forms "that [Plaintiff] did not show an ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, adapt to new or stressful situations, or interact with strangers, coworkers, or supervisors/authority." Id. The ALJ added that on the December 2014 form, Dr. Lu opined that "Plaintiff did not show an ability to interact with family" and on the July 2016 form, Dr. Lu opined that Plaintiff "could not complete a 40-hour workweek without decompensating." Id. (citing Tr. 338-63, 424-58, 826).

The ALJ found that these three opinions from Dr. Lu were due less weight for three reasons. First, the ALJ found that the "forms do not include an adequate explanation or support for these opinions with the explanation provided being limited to identifying diagnosis, prescribed medications, and symptoms from a checklist." Tr. 25-26. Second, the ALJ found that the opinions "are inconsistent with absence of more significant positive objective clinical findings on a persistent basis despite only conservative mental health treatment and intermittent noncompliance with prescribed treatment." Tr. 26 (citing Tr. 424-58, 469-91, 696-

---

[3] Although the ALJ notes that Dr. Lu's second opinion is dated December 2, 2014, a close inspection of this report reveals that it is actually from January 9, 2015. Tr. 426. December 2, 2014 is the date Dr. Lu noted that she last saw Plaintiff. Id. Accordingly, the Court hereinafter refers to this report by the correct date in 2015.

7

98). Third, the ALJ found that "the records from over a dozen emergency room visits for treatment of pelvic pain related to ovarian cysts from October of 2014 through May of 2016 do not document any significant complaints or symptoms pertaining to any mental impairment with the exception of one of the earliest such documented ER visits in October of 2014." Id. (citing Tr. 491-691, 699-825).

### E. Plaintiff's Argument

Plaintiff raises three arguments in support of her contention that the ALJ erred in his analysis of Dr. Lu's opinion. First, Plaintiff argues that "the medical source statements provided by Dr. Lu include abundant support for her option. ECF No. 17, Joint Stipulation at 5. Plaintiff asserts that "the detailed diagnoses and symptoms identified in the three forms provide ample support for Dr. Lu's medical opinion regarding Plaintiff's ability to function in the workplace." Id. Plaintiff notes that Dr. Lu supported her opinions by noting in all three reports, that "Plaintiff suffers from delusions, insomnia, depression, anxiety, panic episodes, manic syndrome, decreased energy, and isolation." Id. (citing Tr. 340, 426, 826).

Second, Plaintiff argues that Dr. Lu's opinions are "entirely consistent with her own comprehensive clinical observations and treatment records." Id. Plaintiff notes that Dr. Lu has diagnosed her with bipolar disorder, severe with psychotic features; panic disorder; and generalized anxiety disorder; and that Dr. Lu has found Plaintiff "to exhibit a depressed, anxious, and angry mood, impaired judgment and insight, and thought content notable for delusions and hallucinations. Id. (citing 341, 343, 361-63, 452, 454, 456, 458, 471, 472, 488, 490, 697). Plaintiff adds that Dr. Lu found Plaintiff to have Global Assessment of Functioning ("GAF") scores of 41 and 45 at two separate psychiatric assessments, which "correlates with serious symptoms . . . or any serious impairment in social, occupational, or school functioning . . . [.]" Id. (citing Tr. 341, 472) (internal quotation marks and citation omitted) (emphasis in original).

8

Third, Plaintiff argues that her absence of complaints relating to her mental impairments on her emergency room medical records bears "little relevance to Dr. Lu's opinions regarding Plaintiff's mental symptoms and limitations" for two reasons. Id. at 6. First, Plaintiff asserts that her emergency department visits "dealt solely with the pain caused by Plaintiff's physical impairments" and "the records from many of these visits demonstrate that the treatment providers conducted purely physical examinations that did not include any mental or psychiatric evaluation components." Id. Second, Plaintiff asserts that the ALJ's finding that there was only one notation of her complaining of symptoms pertaining to her mental impairments is inaccurate and an understatement of the record. Id. Plaintiff notes that in addition to the October 2014 emergency department record observed by the ALJ indicating mental health problems, emergency department records from November 13, 2014, noted that her "psychiatric status was listed as 'anxious[,]'" and emergency department records from April 3, 2015, note that Plaintiff was "'anxious' and 'tearful.'" Id. (citing Tr. 562, 604).

### F. Defendant's Response

Defendant argues that the ALJ's decision to give "little weight" to Dr. Lu's opinion was "well supported" for four reasons.[4] Id. at 9.

First, Defendant argues that the ALJ's rejection of Dr. Lu's opinion because Plaintiff could not interact with family "is inconsistent with a record that shows Plaintiff lives with her family, 'hangs out with the family,' and 'gets along with family members.'" Id. at 9-10 (quoting Tr. 417, 428, 470) (citing Tr. 25, 340, 426, 826).

Second, Defendant argues that the ALJ's reasoning that "Dr. Lu's 'opinions are inconsistent with absence of more significant positive objective clinical findings on a persistent basis'" is also supported by the record. Id. at 10 (quoting Tr. 26).

---

[4] Defendant also argued previously, however, that the ALJ's decision to give less weight to Dr. Lu's opinion was supported by three reasons. Id. at 7.

9

Specifically, Defendant argues that Dr. Lu opined that Plaintiff would not be able to sustain concentration, but her treatment records "show no more than slight concentration impairments." Id. (citing Tr. 340, 343, 347, 420, 426, 471, 826).

Third, Defendant argues that the ALJ's reasoning—that Dr. Lu's opinion was due less weight because it was inconsistent with Plaintiff's "'conservative mental health treatment'"— was also supported by the record. Id. (quoting Tr. 26). Specifically, Defendant argues that "Dr. Lu noted [Plaintiff] was routinely in stable condition[,] . . . Plaintiff did not receive any hospitalization for any mental health complaints, and [Plaintiff] rarely reported any mental health issues when at the hospital for other reasons." Id. (citing Tr. 450, 452, 456, 458, 488, 697).

Finally, Defendant argues that "Plaintiff['s] failure to comply with treatment is just another reason supporting the ALJ's finding." Id. at 11 (citing Tr. 24-26, 418, 420, 425, 454, 489, 696).

### G. Standard To Review ALJ's Analysis Of Dr. Lu's Opinion

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

1    "'To reject [the] uncontradicted opinion of a treating or examining doctor,
2    an ALJ must state clear and convincing reasons that are supported by substantial
3    evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198
4    (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and
5    convincing standard is the most demanding required in Social Security cases.'"
6    Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r
7    Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

**H.     ALJ's Decision Not Supported By Substantial Evidence**

Here, the Court finds that the ALJ committed several errors in his analysis of Dr. Lu's opinions. First, with respect to the ALJ's first reason for discounting Dr. Lu's opinions, the ALJ states that the opinions lack adequate support because the explanation provided includes reference to only diagnoses, prescribed medications, and symptoms. The Court disagrees and finds that the ALJ erred by failing to recognize that Dr. Lu's opinions were based on a significant treatment relationship she had with Plaintiff and were, thus, due more weight than otherwise unsupported or unexplained check-the-box forms would command. See Garrison, 759 F.3d at 1013 (9th Cir. 2014) (citation omitted) (the ALJ's "fail[ure] to recognize that the

11

opinions expressed in [a] check-the-box form . . . [prepared by the plaintiff's treating doctor] were based on significant experience with [the plaintiff] and supported by numerous records . . .[were] entitled to weight that an otherwise unsupported and unexplained check-box form would merit" constituted an "egregious and important error[].").

On the contrary, Dr. Lu supported her opinions by noting that she had seen Plaintiff since June 15, 2014, and that Plaintiff had been diagnosed with bipolar disorder, severe psychotic feature, panic disorder, and generalized anxiety disorder and that Plaintiff has been hospitalized. Tr. 340, 426, 826. Dr. Lu also commented in her January 2015 opinion that "[Plaintiff] is agitated, has mania, depression, and anxiety." Tr. 426. Dr. Lu commented in her July 2016 opinion that "[Plaintiff] has depression, anxiety, insomnia, delusion, and hallucination." Tr. 826. Finally, Dr. Lu observed the medications Plaintiff was prescribed during the time period surrounding her opinions.

Next, the Court finds that the ALJ's second reason for discounting Dr. Lu's opinions—that they are inconsistent with the absence of more significant objective findings, conservative mental health treatment, and noncompliance with treatment—is also not a clear and convincing reason supported by substantial evidence in the record for rejecting Dr. Lu's opinions. Plaintiff's conservative treatment and lack of significant objective findings is explainable by Plaintiff's lack of medical insurance for several years. Specifically, Plaintiff testified at the administrative hearing that she was unable to seek treatment and get medication for "a period of a few years" when she did not have insurance. Tr. 52. Plaintiff explained that "[her] insurance got taken away when [she] got married" because she was on her parents' insurance until the time she got married, but "when [she] got married, [she] c[ould]n't be on [her] parents' insurance anymore and it took Medi-Cal a year-and-a-half to get [her and her husband] on insurance." Id. Plaintiff also explained that she didn't have insurance until roughly two years prior

12

to the July 15, 2016, hearing. Id. Accordingly, because Plaintiff's conservative treatment, and the absence of objective findings that her lack of insurance contributed to, was explainable by Plaintiff's lack of insurance, the Court finds that this was not a clear and convincing reason for according Dr. Lu's opinion less weight. See Orn, 495 F.3d at 638 (9th Cir. 2007) (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)) (noting that "'[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds'").

     Moreover, Plaintiff's noncompliance with treatment is explainable by the difficulty Plaintiff had getting in to see her doctor to obtain refills of her medications and the adverse side effects caused by her medications. For example, when questioned by the ALJ at the administrative hearing about times when Plaintiff was "periodically" off her medications, Plaintiff explained that there were times when she was off her medications "because when [she would] go to try to get refills, [her] doctor wo[uld]n't refill them until she sees [Plaintiff], and then [her] doctor['s] . . . schedule has been very complicated and so trying to get into an appointment has been difficult." Tr. 52-53. Plaintiff added that "there have been a couple times where [she] ha[s] missed [her] appointments due to the fact that [she] ha[s] not felt well enough to leave the house . . . and the doctor wouldn't approve any of [her] medicine without seeing [her]." Tr. 53. Plaintiff also explained that when she did get her medicine, they caused side effects including blurred vision, nausea, anxiety, stomach cramps, diarrhea, feeling hot, and migraines that appear "three to four times a week." Tr. 49-50. Accordingly, because Plaintiff's noncompliance with treatment is explainable by three good reasons—that she did not have insurance for several years, that she struggled to get appointments when she dis have insurance, and that her medications caused adverse side effects—the Court finds that this was not a clear and convincing reason supported by substantial evidence to accord less weight to Dr. Lu's opinions. See Orn, 495 F.3d at 638

13

(quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)) (stating that "an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies").

Finally, the Court finds that the ALJ's third reason for discounting Dr. Lu's opinions—that only one emergency department record from October 2014 to May 2016 noted any complaint or symptoms relating to any of Plaintiff's mental impairments—is not a clear and convincing reason supported by substantial evidence in the record for discounting Dr. Lu's opinions. As Plaintiff correctly notes, two other emergency department charts during this time period also noted that Plaintiff's psychiatric status was "anxious" and "tearful." Tr. 562, 604. Moreover, as discussed above, Dr. Lu noted that Plaintiff was diagnosed with generalized anxiety disorder, and Dr. Lu specifically commented on two of the opinion forms that Plaintiff appeared anxious. Tr. 340, 426, 826. Thus, the ALJ's observation of these records understates Plaintiff's psychiatric symptoms and, therefore, the ALJ's conclusion is not supported by substantial evidence in the record.

Accordingly, because the ALJ erred in his evaluation of Dr. Lu's opinion, which demonstrates limitations greater than those assessed by the ALJ, it follows that the ALJ's step five finding—that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and is, therefore, not disabled— is not supported by substantial evidence and shall be reassessed by the Commissioner on remand.

### IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995,

1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)). On remand, the ALJ shall review and consider Plaintiff's medical records, including the opinions of Dr. Lu, in determining whether Plaintiff can perform any other work at step five.

IT IS SO ORDERED.

DATED: 7/6/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge